UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
WILMINGTON SAVINGS FUND SOCIETY, FSB,
D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY
BUT AS TRUSTEE FOR CARLSBAD FUNDING
MORTGAGE TRUST,

                           Plaintiff,

      - against -

LENA WHITE; PEOPLE OF THE STATE OF NEW
YORK C/O THE INCORPORATED VILLAGE OF
WILLISTON PARK; JOSEPH MICELI; CITIBANK
(SOUT DAKOTA), N.A.; FAIRFIELD TOWN
CENTRE LLC; "JOHN DOE #1" through "JOHN DOE
# 10" inclusive the names of the ten last name Defendants
Being fictitious, real names unknown to Plaintiff, the
Parties intended being persons or corporations having an
Interest in, or tenants in possession of, portions of mortgaged
Premises described in the Complaint,

                           Defendants.
------------------------------------------------------------------X

**ORDER ADOPTING REPORT AND RECOMMENDATION**
17-CV-2288 (RRM) (SIL)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Wilmington Savings Society, FSB, d/b/a Christiana Trust, Not Individually but as Trustee for Carlsbad Funding Mortgage Trust ("Wilmington"), commenced this diversity action pursuant to Article 13 of the New York Real Property Actions and Proceedings Law ("RPAPL") §§ 1301 *et seq.*, against defendants Lena White, John Doe # 1 through John Doe # 10 (the "John Doe Defendants"), People of the State of New York c/o Village of Williston Park ("Williston Park"), Joseph Miceli, Citibank (South Dakota), N.A. ("Citibank"), and Fairfield Town Centre LLC ("Fairfield") (Williston Park, Miceli, Citibank and Fairfield, collectively, the "Non-Mortgagor Defendants," and together with White and the John Doe Defendants, the "Defendants"), seeking to foreclose on a mortgage encumbering residential property located at 105 Custer Avenue, Williston Park, New York 11596 (the "Subject Property"). (*See* Compl.

(Doc. No. 2).) Plaintiff moved, unopposed, for summary judgment on its complaint against White pursuant to Fed. R. Civ. P. 56 and for default judgment against the Non-Mortgagor Defendants pursuant to Fed. R. Civ. P. 55. (Motion for Summ. J. ("Mot.") (Doc. No. 34).) The Court referred Plaintiff's motion for summary judgment to Magistrate Judge Steven Locke for a Report and Recommendation. (Order Referring Motion (Doc. No. 36).)

On May 28, 2019, Magistrate Judge Locke filed a Report and Recommendation recommending that Plaintiff's motion for default judgment against the Non-Mortgagor Defendants be granted but the motion for summary judgment against White be denied. (Report and Recommendation ("R&R") (Doc. No. 37).) Plaintiff objects to the R&R with respect to the denial of summary judgment. (Obj (Doc. No. 39).) Defendants have not filed objections. Having reviewed the R&R and objections, the Court rejects those objections and adopts the R&R.

## BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history in this case, as well as with Magistrate Judge Locke's R&R. Nonetheless, the Court recapitulates relevant aspects of the case and the R&R for the convenience of the reader.

White is a resident of the state of New York and owns the Subject Property. On or about September 30, 2005, White executed and delivered a note (the "Original Note" and, as subsequently modified, the "Note") to mortgagor ICC Mortgage Services by which she promised to repay the principal amount of $130,000.00 plus interest. (Affidavit in Support of Summary Judgment and Amount Due ("Sutton Affidavit") (Doc. No. 34-13) at 3; Note (Doc. No. 34-1).)[1] On that same date, White executed and delivered a mortgage ("Original Mortgage" and, as

---

[1] Unless otherwise noted, all page numbers refer to ECF pagination.

subsequently modified, the "Mortgage") to secure payment pursuant to the Note; the Mortgage was recorded with the Nassau County Clerk on October 21, 2005. (Sutton Affidavit at 3, Mortgage (Doc. No. 34-2).) On or about August 11, 2010, White executed a mortgage modification agreement (the "Modification Agreement"), which modified the terms of the Original Note and Original Mortgage by, among other things, increasing the unpaid principal balance and changing the rate at which interest accrued; this Modification Agreement was recorded with the Nassau County Clerk on January 13, 2011. (Sutton Affidavit at 3–4; Home Affordable Modification Agreement (Doc. No. 34-3) §3(B)–3(C)).)

On June 21, 2016, the Mortgage and Note were assigned to Wilmington; this assignment was duly recorded on September 12, 2016. (Sutton Affidavit at 4; Assignment of Mortgage (Doc. No. 34-4).) Wilmington has been in possession of the Note at all times relevant to the instant motion. (Sutton Affidavit at 4.)

White failed to make the payment due on April 1, 2011, and all payments due thereafter in accordance with the terms of the Note and Mortgage, and thus defaulted on both instruments. (Sutton Affidavit at 5.) Wilmington represents that on September 29, 2016, it mailed White a 90-day notice as required by RPAPL § 1304 and that it mailed White a default notice in accordance with the terms of the Mortgage on December 21, 2016. (*Id.*) To support this representation, Wilmington provides Exhibits E and F to the Declaration of Stuart L. Kossar, an associate at the law firm representing Wilmington. (Kossar Dec. (Doc. No. 34).) Exhibit E, which Kossar represents is a copy of the Default Notice dated December 21, 2016, (Kossar Dec. ¶ 8,) contains a photocopy of an envelope addressed to White at her Williston Park address, bearing a postage meter stamp dated 12/22/16, (Exhibit E (Doc. No. 34-5).) Exhibit F, which Kossar states is a copy of the RPAPL § 1304 notice dated September 29, 2016, (Kossar Dec. ¶

3

9,) contains (i) photocopies of an envelope addressed to White at her Williston Park address, bearing a USPS Certified Mail number and (ii) an envelope addressed to White at her Williston Park address, bearing a postage meter stamp dated September 29, 2016. The Kossar Declaration makes no representation regarding when or how these notices were sent to White. Wilmington also submits an affidavit from Barkley Sutton, the Assistant Vice President of Rushmore, Wilmington's loan servicer, who is familiar with business records maintained by Wilmington. (Sutton Affidavit at 2–3.) The Sutton Affidavit provides, in relevant part:

> On September 29, 2016, Plaintiff served RPAPL § 1304 Notices (Pre-Foreclosure 90-Day Notices), typed in fourteen (14) point font with a list of at least five (5) HUD Housing Counseling Agencies that serve[] the region in which Defendant is believed to reside… via first class mail at her last known mailing address of 105 Custer Avenue, Williston Park, New York 11596, by depositing true copies of the same enclosed in a post-paid properly addressed wrapper, in –a post office – official depository under the exclusive care and custody of the United States Postal Service within the State of New York, by regular and certified mail.

(*Id*. at 5.)

After White failed to take any steps to address her default, Wilmington elected to accelerate the debt as permitted by the Note and Mortgage. (*See* Memorandum of Law in Support of Summary Judgment and Default Judgment ("Pl.'s Mem.") (Doc. No. 34-20) at 3.)

The Non-Mortgage Defendants each hold a lien encumbering the Subject Property that is subject and subordinate to the Mortgage. (Compl. ¶¶ 6–9.) The John Doe Defendants are unknown tenants occupants, persons or corporations who Wilmington believed, at the time it filed the complaint, had or claimed an interest in the Subject Property; however, since filing, Wilson has learned that no other persons or corporations live at the Subject Property. (Compl. ¶ 10; Affidavit of No Tenants (Doc. No. 34-10).)

Plaintiff's Motion

Wilmington commenced this action against defendants on April 17, 2017. (Doc. No. 1). White filed an answer to the complaint, *pro se*, which asserted the affirmative defense of lack of subject matter jurisdiction because, she argues, Wilmington's legal counsel is located in New York and so Wilmington and White are not of diverse citizenship. (Answer (Doc No. 16).) In response to Non-Mortgagor Defendants' failure to timely answer or otherwise respond to the complaint, Wilmington requested certificates of default against them on July 13, 2018. (Doc. No. 31.) The Clerk of Court entered defaults against the Non-Mortgagor Defendants on July 24, 2018. (Doc. No. 32). Following this, Wilmington filed a motion for summary judgment against White and for default judgment against the Non-Mortgagor Defendants on October 4, 2018. (Doc. No. 34).

Wilmington's motion makes three arguments. First, in support of its motion for summary judgment against White, Wilmington asserts that "summary judgment is warranted against Defendant, Lena White, as her answer fails to present a triable issue of fact." (Pl.'s Mem. at 8.) Second, Wilmington argues that the Non-Mortgagor Defendants' failure to respond to the complaint, despite being duly served with the Summons and Complaint, is willful and prejudicial to Wilmington. (*Id*. at 8–9.) Third, Wilmington argues that it has established its *prima facie* entitlement to a judgment of foreclosure and defendant White's answer does not present a defense. (*Id*. at 9–10.) Wilmington seeks, as relief, summary judgment against White; "Dismissal of the Answer of Defendant, Lena White; … Permission to treat the Answer of Defendant, Lena White, as a limited Notice of Appearance entitling her to receipt, without prior notice, a copy of the Notice of Sale, Notice of Discontinuance, and Notice of Surplus Monies, if any;" default judgment against the Non-Mortgagor Defendants; judgment of foreclosure and

sale; appointment of a referee to effectuate a sale of the Subject Property and disperse the funds from the sale; "Amendment of caption to strike defendant 'John Doe #1' through 'John Doe #10'"; and any other relief as the Court deems proper. (*Id*. at 10.)

Wilmington filed an Affidavit of Service noting that it served the notice of motion, memorandum of law, and supporting exhibits upon *pro se* petitioner White. (Affidavit of Service (Doc. No. 34-21).) White did not file a response to Wilmington's summary judgment motion.

The R&R

In his R&R, Magistrate Judge Locke recommends granting Wilmington's motion for default judgment because the complaint contained "well-pleaded allegations of nominal liability" and Wilmington had filed "affidavits substantiating proper service upon the Non-Mortgagor Defendants of the Summons and Complaint, as well as the present motion seeking a default judgment," which established its right to default judgment. (R&R at 16–17.) Magistrate Judge Locke recommends that Wilmington's motion for summary judgment against White be denied, however, because Wilmington has failed to meet its burden to show sufficient evidence demonstrating an absence of material issue as to its compliance with the notice requirements set forth in RPAPL § 1304. (*Id*. at 11–13.) Specifically, Magistrate Judge Locke finds that the documents set forth in Exhibits E and F, as well as the Sutton Affidavit, taken together, are not sufficient to establish compliance with the service provision of RPAPL § 1304. (*Id*.) Additionally, Magistrate Judge Locke notes that Wilmington provided no basis for its request that White's answer be dismissed or its request for permission to treat the Answer as a limited notice of appearance, and so he does not address them. (*Id*. at 10.)

Objections

Wilmington objects to Magistrate Judge Locke's recommendation with respect to the summary judgment motion. It first argues that the evidence provided, "taken as a whole, constitutes proof of actual mailing of the notice to [White] sufficient to establish [Wilmington's] compliance with RPAPL 1304." (Obj. at 2.) Second, Wilmington argues that White waived any objection to Wilmington's "proper showing of compliance with RPAPL 1304 as she failed to raise it in her answer and failed to interpose opposition to Plaintiff's motion." (*Id*. at 3.) Accordingly, Wilmington argues that it is entitled to summary judgment against White. (*Id*.)

**STANDARD OF REVIEW**

When reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party raises an objection to an R&R, the district court "shall make a *de novo* determination of those portions of the Report and Recommendation to which objection is made." 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 149–50 (1985); *Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). Portions to which no party has objected are reviewed for clear error. *See Morritt v. Stryker Corp.*, 973 F. Supp. 2d 177, 181 (E.D.N.Y. 2013); *Price v. City of New York*, 797 F. Supp. 2d 219, 223 (E.D.N.Y. 2011). The Court will find clear error only where, upon a review of the entire record, it is left with the definite and firm conviction that a mistake has been committed. *See* Fed. R. Civ. P. 72(a); *Nielsen v. New York City Dep't of Educ.*, No. 04-CV-2182 (NGG) (LB), 2007 WL 1987792, at *1 (E.D.N.Y. July 5, 2007).

**DISCUSSION**

RPAPL § 1304 provides, in relevant part, that "with regard to a home loan, at least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against the

7

borrower, or borrowers at the property address and any other address of record, including mortgage foreclosure, such lender, assignee or mortgage loan servicer shall give notice to the borrower in at least fourteen-point type which shall include" certain enumerated information. The 90-day notice "required by this section shall be sent by such lender, assignee (including purchasing investor) or mortgage loan servicer to the borrower, by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage." RPAPL § 1304.

A plaintiff in a New York mortgage foreclosure action makes a *prima facie* case once it submits the mortgage, the unpaid note, and evidence of the default. *W. Coast 2014-7, LLC v. Tolson*, 15-CV-6306 (ADS)(GRB), 2017 WL 3405517 at *4 (E.D.N.Y. Aug. 7, 2017) (citation omitted). Both state and federal courts in New York, however, have found that proper service of a RPAPL § 1304 90-day notice on the borrower "is a condition precedent to the commencement of a foreclosure action" and a plaintiff has "the affirmative obligation to establish strict compliance with RPAPL § 1304 regardless of the adequacy of Defendants' briefing." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 83 (E.D.N.Y. 2019) (internal quotation marks and citations omitted); *see also Wells Fargo Bank, N.A. v. Lewczuk*, 153 A.D. 3d 890, 891–92 (N.Y. App. Div. 2d Dep't 2017) (quoting *Aurora Loan Servs. LLC v. Weisblum*, 85 A.D. 3d 95, 106 (N.Y. App. Div. 2d Dep't 2011)). A plaintiff cannot satisfy this burden with "conclusory statements of compliance with RPAPL's requirements." *United States v. Starr*, 16-CV-1431 (NSR), 2017 WL 4402573 at *3 (S.D.N.Y. Sept. 29, 2017). Accordingly, in support of a motion for summary judgment, a plaintiff in a foreclosure action is required to provide "sufficient evidence demonstrating the absence of material issues as to its strict compliance with RPAPL

1304, and failure to make this showing requires denial of the motion, regardless of the opposing papers." *Aurora*, 85 A.D. 3d at 106.

There are several ways to establish compliance with the service provision of RPAPL § 1304. A plaintiff may show compliance by providing a sworn statement that the 90-day notice was mailed "by a particular person, or that a particular process, which resulted in mailing, was uniformly and diligently followed." *OneWest Bank, N.A. v. Guerrero*, 14-CV-3754 (NSR), 2018 WL 2727891 at *7 (S.D.N.Y. June 6, 2018) (internal quotation marks and citation omitted); *CIT Bank, N.A. v. Schiffman*, No. 18- 3287, 2021 WL 2172177, at *1, __ F.3d __ (2d Cir. May 28, 2021) (reiterating that an affidavit detailing standard office procedure for mailing § 1304 notices from an employee with personal knowledge of that procedure is sufficient to create a presumption of mailing). A plaintiff may also submit "evidence of actual mailing," such as an affidavit of service, a certified mailing receipt, or a certificate of first-class mailing. *CIT Bank N.A. v. Schiffman*, __ N.E. 3d __, 2021 WL 1177940, at *3 (N.Y. Mar. 30, 2021); *Starr*, 2017 WL 4402573, at *4 ("[C]ourts have accepted as sufficient evidence of mailing 'uncontroverted United States Postal Service records.'" (quoting *CIT Bank, N.A. v. O'Sullivan*, 14-CV-5966 (ADS) (AYS), 2016 WL 2732185, at *5 (E.D.N.Y. May 10, 2016)); *See HSBC Bank USA, Nat. Ass'n. v. Ozcan*, 154 A.D.3d 822, 830 (N.Y. Appp. Div. 2d Dep't 2017) (Barros, J., dissenting) ("With both registered and certified mail, the United States Postal Service (hereinafter USPS) provides the sender with a mailing receipt as proof of mailing at the time of mailing and, upon request, an electronic record of the date and time of delivery or attempted delivery…. With first-class mail, the USPS, upon request and payment of a fee, provides the sender with a certificate of mailing as evidence of mailing …. Therefore, by requiring the lender or mortgage loan servicer to send the RPAPL 1304 notice by registered or certified mail and also by first-class mail, the

legislature provided the means for the plaintiff to demonstrate its compliance with the statute, *i.e.*, by submitting the proof of mailing issued by the USPS.") (internal citations omitted).

Wilmington argues that the evidence submitted alongside its summary judgment motion, taken together, satisfies it burden to demonstrate strict compliance with RPAPL § 1304, but this Court agrees with Magistrate Judge Locke that this is not so. The Sutton Affidavit is neither from a person averring to have mailed the 90-day notice, nor does it describe a particular process which would have resulted in the mailing. The Sutton Affidavit merely states in conclusory fashion that "Plaintiff served" the notice "via first class mail." Wilmington also provides two copies of the text of the 90-day notice itself, a mailing label bearing White's address and a bar code with the text "USPS Certified Mail," and a mailing label bearing White's address with a First Class Mail U.S. postage meter stamp dated 9/29/2016. The postage meter stamp and bar code indicate that the envelopes were prepared for mailing, but not that they were actually sent, and the exhibits do not contain proof of mailing issued by the USPS. Moreover, the Kossar Declaration to which these items are appended makes no representation regarding when or how they were mailed to White. Finally, the Proof of Filing Statement indicates that Wilmington has previously represented to others that it complied with RPAPL § 1304 but does not itself evince compliance.

Wilmington also argues that Magistrate Judge Locke erred in considering the issue of compliance with RPAPL § 1304 because White waived this defense by failing to raise it in her answer. This argument is incorrect for two reasons. First, it is the movant who bears the burden on summary judgment to demonstrate that there is no material issue as to RPAPL § 1304 compliance, a burden which Wilmington has failed to satisfy. The Court cannot simply credit Wilmington's assertion that it complied with § 1304 because White, a *pro se* litigant, failed to

file a motion in opposition. In the case of an unopposed motion for summary judgment, "in determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court … must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (stating that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts"). Moreover, New York courts have found that the issue of noncompliance with RPAPL § 1304 can be raised at any time. *See, e.g., Citimortgage, Inc. v. Espinal*, 134 A.D. 3d 876, 879 (N.Y. App. Div. 2d Dep't 2015). Accordingly, the Court agrees with Magistrate Judge Locke that Wilmington is not entitled to summary judgment against White.

The Court has reviewed the remainder of Magistrate Judge Locke's recommendations to which the parties did not object for clear error. The Court affirms and adopts the thorough and well-reasoned Report and Recommendation as the opinion of the Court.

## CONCLUSION

Wilmington's motion for default judgment against the Non-Mortgagor Defendants is granted, and its motion for summary judgment is denied. The matter is respectfully referred to Magistrate Judge Locke for pre-trial proceedings.

SO ORDERED.

Dated: Brooklyn, New York
       June 22, 2021

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge