UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------------X
WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A
CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS
TRUSTEE FOR CARLSBAD FUNDING MORTGAGE
TRUST,

**REPORT AND
<u>RECOMMENDATION</u>**

                                                    Plaintiff,                    2:17-cv-02288 (AMD) (JMW)

                        -against-

LENA WHITE; PEOPLE OF THE STATE OF NEW
YORK C/O THE INCORPORATED VILLAGE OF
WILLISTON PARK; JOSEPH MICELI; CITIBANK
(SOUTH DAKOTA), N.A.; FAIRFIELD TOWN CENTRE
LLC, "JOHN DOE #1" through "JOHN DOE #10" inclusive
the names of the ten last name Defendants being fictitious,
real names of the ten last name Defendants being fictitious,
real names unknown to Plaintiff, the parties intended being
persons or corporations having an interest in, or tenants in
possession of, portions of mortgaged premises described in
the Complaint,

                                                    Defendants.
---------------------------------------------------------------------------------X

**A P P E A R A N C E S:**

**Louis A. Levithan, Esq.**
Law Offices of Knuckles, Komosinski & Manfro, LLP
600 East Crescent Avenue, Suite 201
Upper Saddle River, NJ 07458
*For Plaintiff Wilmington Savings Fund Society, FSB,*
*D/B/A Christiana Trust, not individually but as*
*Trustee for Carlsbad Funding Mortgage Trust*

*No Appearance by Defendant Lena White*

**WICKS**, Magistrate Judge:

        Plaintiff Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, not individually,

but as Trustee for Carlsbad Funding Mortgage Trust (hereinafter "Wilmington"), commenced this

diversity action on April 17, 2017, pursuant to Article 13 of the New York Real Property Actions and Proceeds Law ("RPAPL") §§ 1301 *et seq.*, to foreclose on a mortgage on the real property located at 105 Custer Avenue, Williston Park, New York 11596 (the "Subject Property"), against, among other nominal Defendants, Defendant Lena White ("White"). Before the Court is a motion for default judgment brought by U.S. Bank National Association (hereinafter "U.S. Bank"), not in its individual capacity, but solely as Trustee for the RMAC Trust, Series 2016-CTT, as successor in interest to Wilmington, seeking (i) a judgment of foreclosure and sale pursuant to RPAPL § 1351; (ii) directing the distribution of sale proceeds pursuant to RPAPL § 1354; (iii) default judgment against White; (iv) amendment of the caption to reflect U.S. Bank as the proper plaintiff; (v) amendment of the caption to remove "John Doe #1" through "John Doe #10" as unnecessary parties; and (vi) such other relief as this Court may deem just and proper. (DE 84.) For the reasons that follow, the undersigned respectfully recommends that Plaintiff's motion be GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

White is the individual owner and mortgagor of the residential property located at 105 Custer Avenue, Williston Park, New York 11596 (the "Subject Property"). (DE 2 at ¶ 5.) On or about September 30, 2005, White and Wilmington's assignor entered into an agreement whereby White agreed to be indebted to the Wilmington's assignor in the amount of $130,000.00 in connection with the Subject Property, plus interest on any unpaid amount due (the "Original Note" and, as subsequently modified, the "Note"). (DE 2 at ¶ 11.) On that same day, White executed a mortgage to secure payment pursuant to the Note, which was recorded with the Nassau County Clerk on October 21, 2005 ("Original Mortgage" and, as subsequently modified, the "Mortgage"). (*Id*. at ¶¶ 12-13.) On August 11, 2010, White further executed a mortgage modification agreement

("Modification Agreement"), which, among other things, modified the terms of the Original Note and Original Mortgage by increasing the unpaid principal balance from $123,239.28 to $135,952.59 and changing the interest rate from a fixed rate of 6.125% to a step rate stating at 2.000% for the first five years and increasing by 1.000% every year after, until an interest rate cap of 4.500% is reached. (*Id.* at ¶ 14, Ex. C). Wilmington was assigned the Mortgage on or about June 21, 2016, by indorsement. (*Id.* at ¶ 15.) This assignment was duly recorded on September 12, 2016. (*Id.* at ¶ 15, Ex. D.) Pursuant to the Mortgage, in the event of any default made in the monthly payments, the holder of the Mortgage might declare the entire principal sum due and payable. (*Id.* at ¶ 16.) In its Complaint, Wilmington asserts that White defaulted on the loan on April 1, 2011,[1] and monthly thereafter. (*Id.* at ¶ 17.) On September 29, 2016, Wilmington mailed White, via certified and first-class mail, a ninety-day notice as required by RPAPL § 1304 ("90-Day Notice") and a default notice in accordance with the terms of the Mortgage on December 21, 2016 ("Default Notice"). (*Id.* at ¶¶ 18-19.)

According to Wilmington, White failed to remedy her default and Wilmington elected, pursuant to the acceleration provisions of the Note and Mortgage, to accelerate the full principal sum of the debt permitted by the Note and Mortgage. (*Id.* at ¶ 21.) The Complaint alleges the principal sum due as of the commencement of this action totals $101,347.72, plus interest from March 1, 2011. (*Id.* at ¶ 21.)

---

[1] As discussed further herein, Wilmington writes in the complaint that White defaulted on "April 1, 2001." (*Id.* at ¶ 17.) However, considering that Plaintiff repeatedly writes the date of default as "April 1, 2011" in other documents and that White only executed the Original Note and Original Mortgage on September 30, 2005, the Court considers the reference to "April 1, 2001" in the Complaint to be a typographical or scrivener's error and instead reads the allegation as White defaulted on "April 1, 2011."

## PROCEDURAL HISTORY

Wilmington commenced this foreclosure action on April 17, 2017, against White, "John Doe #1" through "John Doe #10" (the "John Doe Defendants"), the People of the State of New York c/o Village of Williston Park ("Williston Park"), Joseph Miceli ("Miceli"), Citibank (South Dakota), N.A. ("Citibank") and Fairfield Town Centre LLC ("Fairfield") (Williston Park, Miceli, Citibank and Fairfield collectively, the "Non-Mortgagor Defendants").  (DE 1-2.)  White filed her Answer, *pro se*, on June 13, 2017, asserting lack of subject matter as an affirmative defense. [2]  (DE 16.)  This Court held status conferences on October 12, 2017, December 7, 2017, January 18, 2018, April 10, 2018, and May 1, 2018, at which White failed to appear. (DE 22, 24, 26, 28, 30.)  As a result, Wilmington requested leave to move for summary judgment, which the Court granted. (DE 2-30.)  On October 4, 2018, Wilmington filed a motion for summary judgment against White and requested certificates of default against the Non-Mortgagor Defendants for their failure to timely answer or otherwise respond to the Complaint.   (DE 34.)  On May 28, 2019, Magistrate Judge Steven I. Locke issued a Report and Recommendation denying Wilmington's motion for summary judgment against White and granting Wilmington's motion for default judgment against the Non-Mortgagor Defendants.  (DE 37.)[3]  As to the summary judgment motion against White, the Court found that Wilmington could not satisfy its burden to establish strict compliance with the notice requirements of RPAPL § 1304.  (DE 37 at 11.)  While Wilmington submitted two copies of the 90-Day Notice, copies of the certified mail mailing label, first class mail mailing label, Proof of Filing Statement, and a supporting affidavit, the Court found Wilmington did not furnish any

---

[2] White asserted that this Court lacked diversity jurisdiction because the law firm representing Wilmington was located in New York, where White resides. (*See* DE 16.) In a previous Order, the Court addressed White's affirmative defense, instructing that diversity looks to the citizenship of the parties, not the parties' law firms, and thus found diversity jurisdiction to exist.  (DE 37 at 6 n. 5.)

[3] Magistrate Judge Locke's Report and Recommendation was adopted in its entirety on June 22, 2021. (DE 61.)

uncontroverted United States Postal Service records that definitively established that the 90-day notice was indeed mailed.  (DE 37 at 13-14.)

As to the motion for default as against the Non-Mortgagor Defendants, the Court found that the Complaint contained well-pleaded allegations of nominal liability (*i.e.* any judgments or liens are subordinate to Wilmington's mortgage) and thus granted default judgment.  (DE 37 at 16-17.)  As a result of the default judgment, the nominal interest of the Non-Mortgagor Defendants in the Subject Property was extinguished.  (DE 37 at 16.)

The case was then referred to the undersigned for pre-trial proceedings.  (Electronic Order, dated June 22, 2021.)[4]   White failed to appear for two status conferences before the undersigned, on August 18, 2021, and August 30, 2021, and the final pre-trial conference, on October 25, 2021. (DE 64, 66, 67.)  After issuing a warning (*see* DE 37), the undersigned ordered White to show cause as to why a recommendation to the district judge should not be made that her Answer be stricken based on her continued nonappearance and noncompliance with the Court's orders. (DE 72.)   White did not respond.   And so, the undersigned issued a *sua sponte* Report and Recommendation on December 14, 2021, wherein it was recommended that White's Answer be stricken and that Wilmington "promptly seek a default judgment against Defendant."  (Electronic Order dated December 14, 2021.)  On January 19, 2022, the Honorable Judge Ann M. Donnelly[5] adopted the Report and Recommendation in its entirety; accordingly, White's answer was stricken, and Wilmington was directed to move for default judgment if it so wishes. (Electronic Order, dated January 19, 2022.)  On February 1, 2022, Wilmington requested a Certificate of Default against

---

[4]The Hon. Roslynn R. Mauskopf's Order Adopting the Report and Recommendation of Judge Locke refers all pre-trial proceedings to Magistrate Judge Steven I. Locke. However, at that time the case was already reassigned from Magistrate Judge Locke to the undersigned on May 13, 2021.

[5] Judge Donnelly was reassigned to the case on July 2, 2021.

White which the Clerk entered. (DE 81, 83.) On February 18, 2022, U.S. Bank, as successor in interest to Wilmington filed the instant motion. (DE 84.)

## DISCUSSION

### I.   MOTION TO AMEND THE CAPTION

U.S. Bank requests that the caption be amended in two ways. First, to reflect U.S. Bank as the proper party Plaintiff as successor in interest to Wilmington. Second, to strike the Doe Defendants as unnecessary parties.

As it relates to substituting U.S. Bank for Plaintiff as successor in interest to Wilmington, Federal Rule of Civil Procedure 25(c) provides, "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."[6] "'The purpose of Rule 25(c) is to allow an action to continue unabated when an interest in a lawsuit changes hands, without initiating an entirely new suit.'" *Ditech Fin. LLC v. Ragusa*, No. 19-CV-1714(JS)(ARL), 2020 WL 6118827, at *5 (E.D.N.Y. Oct. 16, 2020) (quoting *In re Rates—Viper Patent Litig.*, No. 09-CV-4068, 2011 WL 856261, at *1 (S.D.N.Y. Mar. 10, 2011)). Substitution of a successor in interest under Rule 25(c) is within the sound discretion of the court. *Organic Cow, LLC v. Ctr. For New England Dairy Compact Rsch.*, 335 F.3d 66, 71 (2d Cir. 2003). However, there must be a determination that a party is, in fact, a successor-in-interest in order to grant substitution under Rule 25(c). *Ditech Fin. LLC*, 2020 WL 6118827, at *5.

Here, U.S. Bank submits the sworn affidavit of Anthony Younger ("Younger Affidavit"), the Assistant Secretary of Rushmore Loan Management Services LLC ("Rushmore"), the servicer

---

[6] Rule 25(c) further requires proper service of the motion under Rule 5. Such service was properly effectuated here. U.S. Bank served its papers on White via mail at her last known address (*see* Rule 5(b)(2)(C); DE 84-21) and while service was not made on Wilmington, the same was unnecessary because the law office bringing the instant motion, the Law Offices of Knuckles, Komosnski & Manfro, LLP, are attorneys for Wilmington. (*See* Rule 5(b)(1); DE 35.)

and attorney in fact for U.S. Bank, who attests, in short, that the Note and Mortgage were transferred and assigned to Wilmington by assignment of Mortgage dated June 21, 2016, and recorded with the Nassau County Clerk on September 12, 2016.  (DE 84-3 at ¶ 7.)  Then, after the commencement of this action, the Note and Mortgage were further transferred and assigned from Wilmington to MTGLQ Investors, LP, recorded on June 30, 2020, and then ultimately transferred and assigned to U.S. Bank by Assignment of Mortgage dated June 18, 2020, and recorded with the Nassau County Clerk on August 10, 2020, as Instrument Number 2020-70969. (*Id.*)  U.S. Bank further submits copies of the referenced assignments.  (DE 87-7.)  This is sufficient to show U.S. Bank holds the requisite interest in this action.  *See Ditech Fin. LLC*, 2020 WL 6118827, at *5 (granting motion to substitute successor-in-interest as plaintiff in mortgage foreclosure action where plaintiff submitted an attorney declaration and submitted a copy of the assignment). Therefore, the Court respectfully recommends that Plaintiff's request to amend the caption to name U.S. Bank as plaintiff is granted.  For convenience, U.S. Bank, as the movant, will hereinafter be referred to as "Plaintiff."

As it relates to Plaintiff's motion to strike the Doe Defendants as unnecessary parties, because Plaintiff does not wish to substitute the Doe Defendants with named defendants, amending the caption is not necessary. *See Plenitude Cap. LLC v. Utica Ventures, LLC*, No. 18CV2702 (MKB) (RER), 2019 WL 4014840, at *8 (E.D.N.Y. June 11, 2019), *report and recommendation adopted*, No. 18CV02702 (MKB) (RER), 2019 WL 3543610 (E.D.N.Y. Aug. 5, 2019) ("Because Plaintiff does not wish to substitute the Doe Defendants with named defendants, I find that amending the caption is not necessary"); *OneWest Bank, N.A. v. Hawkins*, No. 14 CV 4656 NGG, 2015 WL 5706945, at *12 (E.D.N.Y. Sept. 2, 2015), *report and recommendation adopted*, No. 14-CV-4656 NGG CLP, 2015 WL 5706953 (E.D.N.Y. Sept. 28, 2015) ("Finally, plaintiff seeks to

amend the caption of this action to strike defendants 'John Doe No. 1' through 'John Doe No. 10'. . . There is no need to amend the caption.")  Instead, the Court respectfully recommends that the action against the Doe Defendants be dismissed without prejudice.  *See id.*

## II.    MOTION FOR DEFAULT

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. First, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action.  *See* Fed. R. Civ. P. 55(a); *see also* Loc. Civ. R. 55.2.  Second, after the clerk's certificate of default is issued and posted on ECF, a party may apply for entry of a default judgment.  Fed. R. Civ. P. 55(b); *see also* Loc. Civ. R. 55.2(b).

The decision to grant a motion for default is left to the discretion of the district court. *United States v. Dougherty*, CV 15-554 (ADS) (AKT), 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016), *report and recommendation adopted* by 2016 WL 4705549 (E.D.N.Y. Sep. 7, 2016).  A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06 CV 1878(RJD)(JMA)., 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true).

Even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims.  *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009))

(alterations omitted).  The court must therefore ensure that (1) Plaintiff satisfied all required procedural steps in moving for default judgment (*see* Local Civ. R. 55.2); and that (2) Plaintiff's allegations, when accepted as true, establish liability as a matter of law.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).[7]

### A.  Jurisdiction

### i.    Service on White and Personal Jurisdiction

Before obtaining a default judgment, a plaintiff must establish proper service of the Summons and Complaint on the defaulting party pursuant to Rule 4 of the Federal Rules of Civil Procedure.  *Advanced Cap. Com. Grp., Inc. v. Suarez*, 2013 WL 5329254, at *2 (E.D.N.Y. Sep. 20, 2013) (adopting report and recommendation).  When considering a motion for default, a court may first "assure that it has personal jurisdiction over the defendant."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (citation omitted).

Rule 4 prescribes the manner by which service of process must be effectuated in order to subject a defendant to the court's jurisdiction.  *See* Fed. R. Civ. P. 4.  Rule 4(e) provides that an

---

[7] Some courts in this District also commonly consider the same factors that apply to motions to set aside an entry of a default judgment, namely, (1) whether the default was willful; (2) the level of prejudice movant would suffer if the default motion were denied; and (3) whether a meritorious defense is presented.  *See, e.g., Double Green Produce, Inc. V. Forum Supermkt. Inc.*, 387 F. Supp. 3d 260, 271 (E.D.N.Y. 2019) (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-171 (2d Cir. 2001); *Mack Fin. Servs. v. Poczatek*, No. CV 10-3799(JS)(AKT)., 2011 WL 4628695, at *3 (E.D.N.Y. Aug. 30, 2011) (report and recommendation adopted in part by 2011 WL 4628692 (E.D.N.Y. Sep. 30, 2011)); *Off-White LLC v. Beijing Yinyu Trading Co., Ltd.*, 2022 WL 846833, at *3 (S.D.N.Y. Mar. 22, 2022).  Applying the *Pecarsky* factors for guidance is appropriate when the default judgment is sought against a defendant who has appeared, then defaulted, as opposed to one who never appeared in the first instance.  However, where, as here, an answer is stricken as a sanction for the defendant's failure to participate in discovery and/or noncompliance with court orders, it is considered as if no answer or appearance has been filed in the first instance, as to allow the plaintiff to seek default relief.  *See Greenup v. Rodman*, 42 Cal. 3d 822, 828 (1986) ("[W]hen an answer is stricken as a sanction. . .it is as if no answer had been filed in the first instance"); *Munoz v. Coastal Cap. Processing, LLC*, No. 19-CV-1312S, 2021 WL 5136269, at *3 (W.D.N.Y. Nov. 4, 2021) ("This Court finds that striking Defendant's answer is the proper sanction for Defendant's failure to follow any court orders, to engage in discovery, and, ultimately, to allow Plaintiffs to seek relief").  What is more, the Court has already performed a willfulness analysis in its determination to strike White's Answer.  (*See* DE 76.)

individual may be served, *inter alia*, by delivering a copy of the summons and of the complaint to the individual personally or leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there. *See* Fed. R. Civ. P. 4(e)(2)(A-B).

Here, an affidavit of service demonstrates that service of the Summons and Complaint was properly effectuated on White via personal service at the Subject Property. *See* Fed. R. Civ. P. 4(e)(2)(A). (DE 10.)[8] Accordingly, this Court has personal jurisdiction over White.

### ii. Subject Matter Jurisdiction

Plaintiff asserts that the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. (DE 2 at ¶ 8.) Under the diversity jurisdiction statute, federal courts have subject matter jurisdiction over state law claims when the plaintiff and defendant are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012). "A person is deemed a citizen of the state wherein he or she is domiciled at the time the complaint is filed." *DeAngelis v. Am. Airlines, Inc.*, No. 06-CV-1967(NGG), 2009 WL 3762651, at *1 (E.D.N.Y. Nov. 10, 2009). "[A] corporation shall be deemed to be a citizen of any State by . . . where it has its principal place of business." *Id.*

The parties here are diverse. Wilmington is a federal savings bank formed under the laws of the state of Delaware with its principal place of business in Wilmington, Delaware. (DE 2 at ¶ 4.) White is a New York citizen living on the Subject Property. (*Id.* at ¶ 5.) The Complaint alleges

---

[8] Although White's Answer was ultimately struck, it should be noted that White did not raise any defense as to insufficient service of process (*see* DE 16), and therefore, under Rule 12(h) would have waived any defense based on insufficient service of process. Fed. R. Civ. P. 12(h); *Orix Fin. Servs., Inc. v. Cline*, 369 Fed. App'x 174, 177 (2d Cir. 2010) ("A defense of insufficient service of process is waived if it is not asserted by motion under Fed. R. Civ. P. 12 or in the party's responsive pleading").

damages resulting in an accelerated balance owed in the amount of $101,347.72, surpassing the amount in controversy threshold. (*Id.*)

The record is silent as to the citizenship of U.S. Bank. Nonetheless, it is well established that diversity of citizenship is assessed based on the facts as they exist *at the time the action is filed*. *BH99 Realty, LLC v. Qian Wen Li*, No. 10-CV-0693 FB JO, 2011 WL 7091800, at *3 (E.D.N.Y. Oct. 24, 2011), *report and recommendation adopted*, No. 10-CV-00693 FB JO, 2012 WL 213882 (E.D.N.Y. Jan. 24, 2012). "Federal diversity jurisdiction is not lost by post-filing events that change or disturb the state of affairs on which diversity was properly laid at the outset." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999). Therefore, even if U.S. Bank is not a diverse party, the complete substitution of a non-diverse party does not destroy diversity jurisdiction where diversity jurisdiction existed at the outset. *BH99 Realty, LLC*, 2011 WL 7091800, at *3 (finding the complete substitution of a non-diverse party in a mortgage foreclosure action did not destroy diversity jurisdiction that existed at the time the action was commenced).

Accordingly, the Court has subject matter jurisdiction over this matter.

### B.  Procedural Compliance

Local Civil Rule 7.1 requires motions to include a notice of motion, memorandum of law, and supporting affidavits/exhibits containing any necessary factual information for the decision of the motion. E.D.N.Y. Local R. 7.1(a)(1) - (3).  Local Civil Rule 55.2 requires that a party moving for default judgment append to its application the Clerk's certificate of default, a copy of the claim to which no response has been made, a proposed form of default judgment, and that all papers submitted to the Court under Rule 55.2(b) be mailed to the party against whom a default is sought at the last known address of such party, with proof of mailing filed with the Court. E.D.N.Y. Local

R. 5.52(b) - (c).   The movant must also include a nonmilitary affidavit as to the individual defendant pursuant to the Servicemembers Civil Relief Act (50 U.S.C. App. § 521), stating whether the defendant is in the military along with facts to support the affidavit. *See Bhagwat v. Queens Carpet Mall, Inc.*, 14-cv-5474 (ENV) (PK), 2015 WL 13738456, at *1 (E.D.N.Y. Nov. 24, 2015) (citing 50 U.S.C. App. § 521).

Plaintiff filed the subject motion for default (DE 84) including a notice of motion (DE 84), declaration in support (DE 84-1), attorney affirmation in support (DE 84-2)[9]; Younger Affidavit in support (84-3), copies of the Original Note, Original Mortgage, and Modification Agreement DE 84-4; DE 84-5; DE 84-6), copies of the assignments, documents demonstrating the unpaid balance and payment history (DE 84-8; DE 84-9), default notices including the 90-Day Notice (DE 84-11; DE 84-12; DE 84-13); the pleadings (DE 84-14), relevant prior orders (DE 84-15; DE 84-16), the Certificate of Default for White (DE 84-17) and an Affidavit of Non-Military Service of Baily Welch Pomerantz sufficiently demonstrating White is not in the military service (DE 84-18), an affidavit of services rendered (DE 84-19), proposed order (DE 84-20) and affidavit of service demonstrating service of the motion and all supporting documents on White on February 18, 2022. (DE 84-21.)   According, the Court finds that Plaintiff has properly filed the subject motion and has accordingly complied with the procedural requirements of Local Civil Rules 7.1.

---

[9] It appears that Plaintiff submitted an attorney affirmation in place of a memorandum of law as required by Local Civil Rule 7.1(a)(2). While in some cases the omission of a critical document is sufficient to warrant denial of a plaintiff's motion (*see Guanglei Jiao v. Shang Shang Qian Inc.,* No. 18CIV5624ARRVMS, 2020 WL 6370148, at *7 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted,* No. 18CV5624ARRVMS, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) ("This omission is usually sufficient to warrant denial of a plaintiff's motion for default judgment"), courts under similar circumstances have excused a plaintiff's failure to strictly comply with the Local Rule 55.2(b). *See id.* (collecting cases). Given its otherwise substantial compliance with the rules, the Court finds the declaration in support, attorney affirmation, and Younger Affidavit to be sufficient in place of a memorandum of law.

### C. Liability

#### i.    Compliance with RPAPL § 1304

RPAPL § 1304 requires a lender to send notice to a mortgagor at least 90 days before the commencement of any foreclosure action by registered or certified mail, by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage. RPAPL § 1304(1-2). "Proper service of [an] RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition." *CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 116 (2d Cir. 2021). Compliance with § 1304 can be established by evidence of actual mailing (*e.g.* an affidavit of mailing or service) or by proof of a ender's routine business practice with respect to the creation, addressing, and mailing of documents of that nature. *CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550, 556, 168 N.E.3d 1138, 1142 (2021).

It is not settled whether courts in this district must review compliance with § 1304 on motions for default or whether it is strictly a defense that must be raised by a defendant. *See Freedom Mortg. Corp. v. Powell*, No. 218CV4265 (ENV)(CLP), 2020 WL 4932145, at *3 (E.D.N.Y. Aug. 24, 2020). Indeed, decisions from New York Appellate Division suggest a plaintiff is *not* required to show compliance with § 1304 if the borrower does not raise it as a defense, but courts in this district routinely review § 1304 on motions for default judgment. *Id.* at *2-3 (collecting cases). Nonetheless, without clarification from the New York State Court of Appeals or the Second Circuit, courts in the Second Circuit, and particularly in this district, continue to consider § 1304 on motions for default judgment. *See U.S. Bank Nat'l Ass'n, et al. v. Ryszard Kozikowki, et al.*,19-cv-00783(DLI)(CLP), 11-12 (E.D.N.Y. May 10, 2022) (collecting cases). The Court finds no reason to deviate here.

RPAPL § 1304 does not specify the type of proof a lender must submit in a foreclosure action to demonstrate compliance with the statute. However, evidence of an established and regularly followed office procedure gives rise to a rebuttable presumption that such notice was mailed and received by the intended recipient. *CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 118 (2d Cir. 2021); *CIT Bank N.A.*, 36 N.Y.3d at 556. "There is no requirement that a plaintiff in a foreclosure action rely on any particular set of business records to establish a prima facie case, so long as ... the records themselves actually evince the facts for which they are relied upon." *Miami Home LLC v. Viera*, No. 18CV1398NGGSJB, 2022 WL 1693822, at *4 (E.D.N.Y. May 26, 2022) (quotes omitted).

Whether this Court should review Plaintiff's compliance with RPAPL § 1304 on this motion is a non-issue here because Plaintiff complied with the statute's requirements.[10] In support of its motion, Plaintiff provides two copies of the 90-Day Notice purportedly sent to White, one sent via certified mail and one sent via first-class mail at White's last known address, which happens to be at the Subject Property. *See* DE [84-11]. Plaintiff includes copies of: (i) a certified mail mailing label bearing White's address and a bar code with the text "USPS Certified Mail"; (ii) a mailing label bearing White's address with a First-Class Mail U.S. postage stamp dated September 29, 2016. (*Id.*) Plaintiff further submits a computer-generated record of all correspondence sent by Rushmore to White called the "Letter Log" which states the 90-Day Notice was mailed on September 19, 2016 (DE 84-3 at ¶¶ 10-14; DE 84-10), and the Proof of Filing Statement from the Department of Financial Services containing information regarding the foreclosure proceedings that Plaintiff filed with the Department of Financial Services, pursuant to

---

[10] On summary judgment, Magistrate Judge Locke found found a question of fact as to whether the 90-Day Notice actually mailed. (DE 37 at 15-16.) Here, Plaintiff has provided significantly more detail in the Younger Affidavit as to the establish the regularly followed office procedure used by Rushmore to effectuate the mailing of the 90-Day Notice. (*Compare* DE 34-13, *with* DE 84-3.)

RPAPL § 1306 further stating the 90-Day Notice was mailed on September 29, 2016.  (DE 84-12.)
Finally, Plaintiff submits the Younger Affidavit, wherein Younger attests that the Letter Log is a
computer generated business record and that he has personal knowledge that it is Rushmore's
standard business practice to:

   a.   create and print a hard copy of the letters;

   b.   create an entry in the computerized record keeping system that the 90 Day Notice and Notice of Intent to Foreclose were generated;

   c.   scan and save a copy of the written 90 Day Notice and Notice of Intent to Foreclose to the computer record associated with the relevant loan number for the Subject Loan;

   d.   send the 90 Day Notice by Certified Mail and First Class Mail and the Notice of Intent to Foreclose by First Class Mail to the Borrower at the Premises as reflected in Rushmore's computerized record keeping system;

   e.   affix the proper postage, both for the letters sent by Certified Mail and First Class Mail;

   f.   ensure that the title of the 90 Day Notice was typed in at least fourteen (14) point font and the text following the title of the 90 Day Notice was typed in at least fourteen (14) point font and insure that the Notice of Intent for Foreclose contained the appropriate information pursuant to the terms of the Mortgage, and;

   g.   generate and retain in Rushmore's computerized record keeping system a loan level detailed written report summarizing the mailings completed on a daily basis.

(*Id.* at ¶ 11.)  Courts have found similar affidavits attesting to Rushmore's standard mailing
practices and procedures sufficient to establish that Plaintiff complied with RPAPL § 1304.  *See*
*e.g. U.S. Bank Nat'l Ass'n v. Mc Dermott*, No. 20-CV-352 (KMK), 2022 WL 2392522, at *8
(S.D.N.Y. July 1, 2022).  The Court finds so too here.

     **ii.**    **Plaintiff's *Prima Facie* Case for Foreclosure**

     To foreclose on a mortgage, a plaintiff must demonstrate (1) the existence of a mortgage;
(2) ownership of the mortgage; and (3) the defendant's default in payment of the loan.  *OneWest*

*Bank, N.A. v. Hawkins*, No. 14 CV 4656 NGG, 2015 WL 5706945, at *5 (E.D.N.Y. Sept. 2, 2015), *report and recommendation adopted*, No. 14-CV-4656 NGG CLP, 2015 WL 5706953 (E.D.N.Y. Sept. 28, 2015).  "Once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has satisfied its prima facie entitlement to judgment, and the burden shifts to the defendant to demonstrate that there is a triable issue of fact with respect to the merits of the defenses and/or counterclaims."  *Id.*  (internal citations omitted).

Here, Plaintiff has sufficiently pled each element.  First, Plaintiff has established the existence of the Mortgage and the Note by producing copies of the Mortgage and Note. (*See* DE 2; DE 2-1; DE 2-2.)  Through Plaintiff's well pleaded Complaint and supporting exhibits, Plaintiff has established the obligations of White under those instruments.  (*See id.*)

Second, as to ownership, Plaintiff has established it is the holder of the Note and Mortgage.  "[E]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident."  *E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015) (*quoting U.S. Bank, N.A. v. Adrian Collymore*, 68 A.D.3d 752, 754 (2009)).  Plaintiff has demonstrated possession of the Note and accompanying Mortgage prior to the commencement of the instant action has produced the Modification Agreement and all relevant assignment documents.  (DE 84-4, DE 84-5, DE 84-6; DE 84-7.)  Thus, Plaintiff has the right to enforce the corresponding Mortgage and to initiate this foreclosure action.  *See Windward Bora, LLC v. Brown*, No. 21CV03147KAMRER, 2022 WL 875100, at *4 (E.D.N.Y. Mar. 24, 2022).

Third, Plaintiff has sufficiently established default by White.  As alleged in the Complaint, Defendant has failed to comply with the terms and provisions of the Mortgage by failing to make the required monthly payments.  (DE 2 at ¶¶ 17-18.)  The Default Notice and 90-Day Notice

support this allegation.  (DE 2-4.)  However, there appears to be some discrepancy in the record as to exactly when White defaulted on payments. The Complaint alleges that White defaulted in making the monthly payment due on "April 1, 2001"[11] (DE 2 at ¶ 17) and that pursuant to the acceleration provisions of the Note and Mortgage, the principal sum of $101,347.72 plus interest from "March 1, 2011" is due.  (DE 2 at ¶ 21.)  The Default Notice and the 90-Day Notice[12] further provide that White's date of default is April 1, 2011.  (DE 2-4.)  Similarly, it is worth noting that in Plaintiff's summary judgment motion, Plaintiff argued that White defaulted on payments on April 1, 2011 (DE 34-20 at 2), and produced an affidavit from a principal of Rushmore attesting that White defaulted on April 1, 2011.  (DE 34-13 at 4.)  However, here Younger attests that White defaulted in making monthly payments on "December 1, 2012," and thus Plaintiff is entitled to the principal sum of $132,046.76, plus interest, costs and fees thereon from "November 1, 2012." (DE 84-3 at ¶¶ 8-9.)  Plaintiff further submits a payment history (DE 84-8) and judgment figure calculation (DE 84-9) which exhibit December 1, 2012, as the date of default.  Plaintiff offers no explanation as to the discrepancy in date. Nonetheless, there is no question that White has defaulted on her obligation under the Mortgage and the Note.  (*See* DE 2; DE 2-4.) The Court finds that the question of when Plaintiff's damages began to accrue is a question of damages and not liability and thus does not preclude a finding of liability.

For these reasons, Plaintiff has demonstrated a *prima facie* case for foreclosure as against White.  *See United States v. Phillips*, No. 19CIV5348AMDVMS, 2022 WL 256954, at *5, 10 (E.D.N.Y. Jan. 7, 2022), *report and recommendation adopted*, No. 19CV5348AMDVMS, 2022

---

[11] Recall, the Court considers "April 1, 2001" to be a typographical error and instead the Court reads the allegation as White defaulted on "April 1, 2011."

[12] The 90-Day Notices specifically states that "[a]s of 9/29/2016 your home loan is 2008 days in default." (DE 2-4.) 2008 days prior to September 29, 2016, is April 1, 2011.

WL 256576 (E.D.N.Y. Jan. 27, 2022) (finding Plaintiff adequately alleged its entitlement to foreclosure and a judgment of foreclosure and sale was granted). Therefore, it is respectfully recommended that Plaintiff's motion for default judgment and for the foreclosure and sale of the Subject Property be granted.

### D. Damages

In a foreclosure action, once a plaintiff has submitted the Note and Mortgage and default has been granted, all that is left is to establish damages with reasonable certainty. *Nationstar Mortg. LLC v. Atanas*, 315 F. Supp. 3d 700, 706 (W.D.N.Y. 2018). "While Rule 55 presumes all factual allegations admitted for purposes of liability, no such deference is given to plaintiff's damages calculations." W*ilmington Sav. Fund Soc'y, FSB v. Klein*, No. 18CV4231 (FB) (RER), 2019 WL 1995472, at *3 (E.D.N.Y. Mar. 12, 2019), *report and recommendation adopted*, No. 18CV4231 (FB) (RER), 2019 WL 1994491 (E.D.N.Y. May 6, 2019).

By its motion, Plaintiff seeks an award in the amount of $271,802.22, plus an additional $4,950.00 in attorneys' fees. (DE 84; DE 84-20.) According to Younger, this figure is comprised of $132,046.76 in unpaid principal (DE 84-3 at ¶ 9), $32,247.07 in unpaid interest (*id.* at ¶18), and monies Plaintiff advanced for the payment of taxes, insurance, etc. (*Id.* at ¶ 19; DE 84-8.)

As detailed above, there is a discrepancy between the Complaint, record, and the instant motion concerning *when* Plaintiff's damages began to accrue. *See supra* at 16-17. By its motion, Plaintiff asserts damages began to accrue on November 1, 2012, approximately one year and seven months after the date alleged in the Complaint. Nonetheless, as further detailed below, Plaintiff has established certain damages beginning from the November 1, 2012 date.[13] And so, as requested by Plaintiff's motion, the following damages should be awarded.

---

[13] Where the computation of damages is more complex than simple mathematical calculations, Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary. *OneWest Bank, N.A. v. Denham*, No. CV

### i.    Principal and Interest

Pursuant to the Younger Affidavit and judgment figure statement submitted by Plaintiff, White has an outstanding principal balance of $132,046.76. (DE 84-3; DE 84-9.)    The Modification Agreement, entered on August 11, 2010, provides that a portion of the principal balance, namely $33,566.94, will be considered "deferred" principal for which White will not pay interest or make monthly payments.  (DE 84-6 at ¶ 3(C).)  The Modification Agreement further provides that the principal balance less the deferred principal—the interest-bearing principal—will accrue interest at the rate of 2.000% for years 1-5, at the rate of 3.000% for year 6, 4.000% for year 7, and 4.5000% for years 8-40. (*Id.*)  A payment history statement submitted by Plaintiff evidences that as of December 1, 2012, the unpaid interest-bearing principal totaled $98,479.82 and the deferred principal totaled $33,566.94. (DE 84-8.)  Applying the appropriate interest rates to the interest-bearing principal, beginning November 1, 2012, Plaintiff demonstrates that as of January 31, 2022, $32,247.07 in interest has accrued.  (DE 84-9.)

Accordingly, it is respectfully recommended that in the event the Court accepts November 1, 2012, as the date of default, Plaintiff be awarded the outstanding balance of $132,046.76, plus $32,247.07 in interest.  It is further recommended that Plaintiff be awarded $12.14 in per diem interest (($ 98,479.81 × .04500) / 365) (*see* DE 84-9) until the date on which judgment is entered. *See Eastern Sav. Bank, FSB v. McLaughlin*, No. 13-CV-1108 (NGG) (LB), 2015 WL 5657355, at *5 (E.D.N.Y. Aug. 17, 2015) (awarding per diem interest until date of judgment).

---

14-5529 DRH AKT, 2015 WL 5562980, at *8 (E.D.N.Y. Aug. 31, 2015). "While the court must ensure that there is a basis for the damages specified in a default judgment, it may. . . make the determination through a hearing." OneWest Bank, N.A., 2015 WL 5706945, at *7. To the extent the Court is not satisfied by Plaintiff's demonstration of damages, or the unexplained discrepancy in date, the Court may hold an evidentiary hearing on the issue.

### ii.    Other Costs and Advances

Plaintiff asserts that by reason of White's default, the Plaintiff advanced money for the payment of certain costs, including payment of taxes and insurance.  (DE 84-3 at ¶ 19.) Although Plaintiff does not explicitly state its authority to recover costs, paragraph 22 of the Mortgage provides that White will be responsible for such costs. (*See* DE 84-5). In support of Plaintiff's entitlement to these costs Plaintiff submits a loan payment history (DE 84-8) and a judgment figure statement (DE 84-9).  While it can be adduced that Plaintiff is seeking approximately $107,508.42 in costs ($271,802.22 [total amount sought] – ($132,046.76 [unpaid principal] + $32,247.07 [interest])) the documents submitted by Plaintiff do not clearly substantiate this amount.  Indeed, this amount is not specified in the Younger Affidavit, the payment history, or the judgment figure statement.  Therefore, based on the documents before it, the Court is unable to determine these damages with reasonable certainty.  *See Wilmington Sav. Fund Soc'y, FSB v. Costa*, No. CV182036DRHAYS, 2018 WL 6204620, at *4 (E.D.N.Y. Oct. 29, 2018), *report and recommendation adopted*, No. 18CV2036DRHAYS, 2018 WL 6198954 (E.D.N.Y. Nov. 28, 2018).  Accordingly, Court recommends that Plaintiff's request for damages relating costs be denied.

### iii.    Attorneys' Fees

Paragraph 22 of the Mortgage further provides that "[i]n any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount [borrower] owe[s] Lender . . ." (DE 84-5.)  Thus, Plaintiff is contractually entitled to recover reasonable attorneys' fees and costs resulting from any foreclosure proceeding and White's default.

Here, Plaintiff seeks to recover a flat fee of $4,950.00 for the services rendered according to a FANNIE MAE flat rate fee agreement. (DE 84-19 at ¶ 10.) In support of its claim for attorneys' fees, Plaintiff has submitted an Affirmation of Services Rendered by Louis A. Levithan, Esq., which provides the description of the services that "have or will be performed by your affirmant's office" and the time spent on each task. (*Id.* at ¶ 8.)

"In general, courts in this Circuit will not award attorney's fees assessed at a flat-rate unless the supporting documentation is detailed enough to satisfy the Second Circuit's requirement that 'attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done." *Nationstar Mortg. LLC*, 285 F. Supp. at 624. "The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances." *OneWest Bank, N.A.*, 2015 WL 5562980, at *10; *U.S. Bank Tr., N.A. v. Dingman*, No. 16-CV-1384 (CS), 2016 WL 6902480, at *6 (S.D.N.Y. Nov. 22, 2016) ("Although the $2,900 requested by Plaintiff's counsel seems reasonable for the amount of work involved in connection with this foreclosure, the lack of contemporaneous time sheets precludes any such award"). At a minimum, the proponent of attorneys' fees needs to submit records of the professional's hourly billing rate, the work performed, the amount of time spent on each task, and the name of the professional who performed the respective task. *See OneWest Bank, N.A.*, 2015 WL 5562980, at *10.

Plaintiff here fails to meet this minimum requirement. Accordingly, it is respectfully recommended that Plaintiff's request for attorney's fees be denied.

## IV.    CONCLUSION

Based on the foregoing, the undersigned respectfully recommends the following: (i) the caption by amended to reflect U.S. Bank as the proper plaintiff as successor in interest to

Wilmington; (ii) the claims as against the Doe Defendants be dismissed without prejudice; (iii) a judgment of foreclosure and sale pursuant to RPAPL § 1351 and default judgment against White be granted; and (iv) that Plaintiff be awarded the outstanding balance of $132,046.76, plus $32,247.07 in interest, and an additional $12.14 in per diem interest until the date on which judgment is entered.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
        July 27, 2022

                                        Respectfully recommended,

                                        /s/ *James M. Wicks*
                                        JAMES M. WICKS
                                        United States Magistrate Judge